### HARVEY v. UNITED STATES.
### No. 12011.

United States Court of Appeals District of Columbia Circuit.

Argued March 23, 1954.

Decided July 15, 1954.

Danaher, Circuit Judge, dissented.

Mr. Edward J. Skeens, Washington, D. C., for appellant.

Mr. Gerard J. O'Brien, Jr., Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis A. Carroll and Arthur J. McLaughlin, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, and PRETTYMAN and DANAHER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

John F. Harvey was indicted in twelve counts for illegal traffic in narcotics. At his trial he was represented by competent counsel whom he selected and employed. He was found guilty by a jury and on February 20, 1953, received concurrent sentences of twenty months to five years, plus a fine of $500.

Harvey did not appeal from the judgment of conviction, but later employed new counsel who filed in his behalf on October 14, 1953, a motion under 28 U.S.C. § 2255 (1952) to vacate the judgment on the following ground:

"That the defendant has been deprived of life, liberty, or property, without due process of law within the meaning of the fifth amendment to the federal constitution in that

the prisoner has been denied a fair trial by an impartial jury with the concientious [sic] and effective assistance of counsel within the meaning of the sixth amendment to the federal constitution.

"That because of the foregoing the Court was divested of its jurisdiction by operation of law to impose a lawful judgment in this cause."

This appeal followed the District Court's denial of the motion to vacate.

The motion stated no more than conclusions. But a memorandum of points and authorities submitted in support of it showed the basis of Harvey's claim that he had been deprived of the effective assistance of counsel at his trial. And in his brief on this appeal, filed by his newly-employed counsel, the appellant states the facts upon which he relies:

"* * * Several months prior to trial the appellant took his so called sweetheart to his attorneys office where all three had a discussion concerning the coming trial. That on this occasion the appellant gave his sweetheart, one Patricia N. Brown, narcotics in the presence of his attorney; and that this occurred four or five times in the attorneys office; that she was given two sheets of paper to memorize which was prepared for the purpose of presenting an alibi defense; that Mr. Kayson [1] instructed her how to answer questions under simulated cross-examination. As it turned out later Miss Brown told her father what had transpired and he took her to the office of the United States Attorney when she agreed to testify in behalf o[f] the government. This unexpected event was unknown to Mr. Kayson because Miss Brown was under subpoena by the defendant and remained so until the prosecutor made his opening statement.

\*  \*  \*  \*  \*  \*

"Finally the cause came on for hearing and a jury was sworn on the 14th day of January, 1953. Mr. Kayson received his first surprise of the day when the prosecutor commenced mid-way through his opening statement to describe the testimony of the witness Patricia Brown. Mr. Kayson objected by stating: 'The prosecutor is making certain statements which will definitely be prejudicial unless he can show that this person actually is going to testify to this.'

"* * * [B]ut the bombshell came, however, when Patricia Brown was called to testify. Immediately, Kayson entered a strenuous objection * * * stating that: 'the evidence as it will be adduced by this witness is such that not only will the defendant be charged with things that he is not charged with in the indictment but also counsel himself will be charged with the commission of certain offenses which would be so greatly prejudicial to the defendant that the counsel for defendant will be put in a position of defending not only his defendant but defending himself which will be entirely unfair. * * *' "[2]

It is argued that, as a consequence of these events, Harvey's trial attorney was so discredited in the eyes of the jury that he could not effectively present his client's case; and that the trial judge should have instantly declared a mistrial, although such action was not requested, and should have required Harvey to discharge the attorney whom he had employed, so he might have a new trial with untainted counsel. We observe that, when the prosecutor said Patricia Brown would testify concerning the attempted subornation of perjury, the trial judge inquired of Harvey's attorney whether he desired to associate other counsel with him, as he might find it

---

[1]. Harvey's trial attorney.

[2]. The girl testified substantially as the prosecutor had predicted. Harvey denied practically everything she said. His counsel, Kayson, did not take the stand.

necessary to testify. The court's offer was rejected; the trial counsel did not withdraw, and Harvey did not protest against continued representation by the attorney whom he had selected and employed.

Except for his alleged participation in the scheme to concoct a perjured alibi, Harvey's trial counsel conducted his defense with a high degree of professional skill, as the trial judge said in complimenting his able cross-examination, diligent production of witnesses, and general defensive strategy.

■■ Patricia Brown's story of what happened in the attorney's office was clearly admissible, as fabrication of evidence of innocence is cogent evidence of guilt. Wilson v. United States, 1896, 162 U.S. 613, 621, 16 S.Ct. 895, 40 L.Ed. 1090; Harris v. United States, 1948, 83 U.S.App.D.C. 348, 169 F.2d 887, certiorari denied 335 U.S. 872, 69 S.Ct. 161, 93 L.Ed. 416.

■ If Patricia's evidence, which charged Harvey's counsel with gross misconduct, so prejudiced the jury against the attorney as to render his conduct of the defense ineffective, the fault is Harvey's. He chose his counsel and the evidence tended to show that he himself set in motion and participated in the scheme to present a false and fraudulent defense. He chose to continue throughout the trial with the same counsel. He is in no position now to say the court should have rescued him from his own wrongdoing.

In another connection, to be sure, but in words which are apt in the present situation, a distinguished justice of the Supreme Court once said: "A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law." [3]

Affirmed.

DANAHER, Circuit Judge (dissenting).

There is not the slightest question as to the guilt of the accused. Yet I have been much disturbed throughout an extended consideration of the points urged upon us. My great respect for the judgment of the majority who heard this case with me served to deter an earlier disagreement, but with great deference I am impelled to that course. "A defendant in a criminal case may not legally be found guilty except in a trial in which his constitutional rights are scrupulously observed. No conviction can stand, no matter how overwhelming the evidence of guilt, if the accused is denied the effective assistance of counsel, or any other element of due process of law without which he cannot be deprived of life or liberty," as Circuit Judge Wilbur K. Miller wrote in Coplon v. United States, 1951, 89 U.S.App.D.C. 103, 114, 191 F.2d 749, 760, certiorari denied, 1952, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690. Circuit Judge Proctor, writing in the same case said: "Precious though the right to aid of counsel may be as a safeguard to life and liberty, it is not a fetish to be worshiped blindly," Id., 89 U.S.App.D.C. at page 115, 191 F.2d at page 761, which was not conducive to certainty in my mind. Yet I have an abiding doubt, and I feel bound to express it.

The jury was told at the very outset that the defendant Harvey and his trial attorney, Kayson, had met in the latter's office with one Patricia Brown who had become a drug addict by connivance of the accused; that she was prevailed upon to take heroin in the lawyer's office after which she was handed a typewritten statement which the attorney exhorted her to memorize; then defense counsel coached her as to the manner of presentation of her testimony and as to how she might induce reliance upon and credence in the alibi she was to help establish.

In part, such was the nature of an outline of the Government's case, clearly inculpating the defense attorney Kayson.

3. Mr. Justice Cardozo in Clark v. United States, 1933, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993.

Casting him *then* as the perpetrator of a heinous offense, one which undermines the foundations of our whole system of seeking justice through trial, the Government tainted the defense *ab initio*. Had there been a bench conference in which the judge could have been apprised of the character and extent of the offense of which the Government intended to offer proof, I have no doubt he would have postponed the trial until the entire circumstances could have been explored. An indictment of the defense counsel and of Harvey jointly for the subornation of perjury and for fraud upon the court might have seemed desirable. Substitute counsel could have been procured, or at the very least, the accused could have been advised as to his right to the effective assistance of counsel, for failure to exercise which he would be deemed to have waived it. Rather, zeal in prosecution and anxious desire to convict Harvey were allowed to transcend the demands of justice on the whole case. Surely the integrity of the court demanded some inquiry into the conduct of an attorney thus charged. While defense counsel objected, pointing out the prejudice to the accused, he did not withdraw from the case nor move for a mistrial. The failure of counsel did not preclude the trial judge from acting, *sua sponte*, nor, if it be true that the accused was prejudiced, are we limited in noticing plain error. Cf. Brasfield v. United States, 1926, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345. I do not read Berger v. United States, 1935, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314, to the contrary simply because the case against Harvey was "strong." And see Coplon v. United States, supra.

Due process in criminal cases requires not only that the accused be entitled to representation by counsel but the as-sistance shall be "effective." Indeed, this court specifically has ruled that "Deprivation of those fundamental rights goes to the essence of a fair trial . . .." Mason v. United States, 1951, 90 U.S. App.D.C. 1, 193 F.2d 23; Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. To paraphrase the Supreme Court, Id., 315 U.S. at page 76, 62 S.Ct. at page 467: How can courts be permitted to indulge in "nice calculations as to the amount of prejudice" arising from the denial of the effective assistance of counsel?

The scheme was to suborn perjury and to perpetrate upon the court a fraud, nefarious and criminal in character. If the extrajudicial conduct on the part of the defense counsel were not to be taken by the jury as established through the testimony of the witness Brown, it was necessarily incumbent upon the attorney to become a witness in the case. He did not do so. That he continued as trial counsel, besmirched and beclouded, is not open to serious question.[1]

Attorneys are officers of the court. Their status in the course of any trial, and in a criminal case in particular, is thoroughly recognized by the profession and by laymen alike. To the extent and upon the very basis that they are men of honor and free from opprobrium, the weight to be given to their representations in the trial and in argument, and the appraisals which a jury formulates from the multiple incidents sure to arise during a criminal trial, will stem from the assumption that the attorneys' position is one of probity. This is true no matter how guilty the accused may later be shown to be, no matter how vile the crime with which the accused is charged.

I cannot believe that an attorney can have been so seriously charged as was the case here without the very statement

[1] The point made by the majority that "fabrication of evidence of innocence is cogent evidence of guilt" is not in question. Nor does this discussion go into other aspects of the trial such as comments by the judge in the presence of the jury, nor into the closing argument by Government counsel where the prosecutor clearly put the attorney as well as the accused on trial as "defendants." Possible prejudice in such particulars stemmed from the initial error treated in the text.

having its necessary and derogatory impact on minds of the jury, no matter how skillful, no matter how competent, the defense attorney proved to be. He had to defend himself as well as the accused. His very presence in the case under such circumstances reduced, if it did not destroy, the effectiveness of what otherwise would have been regarded as the "assistance" to which the accused was entitled under the Sixth Amendment. The guaranty contemplates "that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired." Glasser v. United States, supra, 315 U.S. at page 70, 62 S.Ct. at page 465.

Participation in the scheme by the accused with complicity by the attorney can not serve as a waiver of the conflict of interests made to appear here. In Johnson v. Zerbst, 1938, 304 U.S. 458, 467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, the Court pointed out that the petitioner had been convicted and sentenced without the assistance of counsel, and that he contended "that he was ignorant of his right to counsel, and incapable of preserving his legal and constitutional rights during trial." Are we to say that a narcotics peddler, an addict himself, is so aware of the enormity of the offense, however diabolically and criminally conceived, even if by himself, that his procuring the effort through his own counsel is tantamount to a waiver on his part?[2] Rather, when he had been overreached by his own criminal cunning, it is the more reasonable to conclude that he had no adequate comprehension of the significance of his conduct. In any event, the usefulness of his participating

trial defense attorney inevitably was impaired in the eyes of the jury.

Under the circumstances of this case, I cannot believe that the accused had the effective assistance of counsel, and I would grant a new trial.

---

2. ". . . whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." Johnson v. Zerbst, supra, 304 U.S. at page 465, 58

S.Ct. at page 1023; cited with approval, Glasser v. United States, supra, 315 U.S. at page 71, 62 S.Ct. 457. And see Quercia v. United States, 1933, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321.