John H. KELLENSWORTH, Jr. *v.* STATE of Arkansas

CR 81-125                                        633 S.W.2d 21

Supreme Court of Arkansas
Opinion delivered May 17, 1982

*L. Gene Worsham* and *Beth Gladden Coulson,* for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant Kellens-

worth was found guilty of three felonies committed during a single criminal episode on June 16, 1979. The jury fixed the punishment at a 50-year term and a $10,000 fine for rape, a 5-year term for aggravated robbery, and a 5-year term for burglary. Four points for reversal are presented.

It is first argued that the court below had no jurisdiction to try the case, because a notice of appeal to this court had been filed after the trial judge denied a defense motion to dismiss on the ground of double jeopardy. The motion to dismiss was wholly without merit, as we indicated with respect to a similar motion filed by this same appellant in a different case. *Kellensworth* v. *State,* 275 Ark. 252, 631 S.W.2d 1 (1982). In the case at bar the motion to dismiss was filed less than two weeks before the scheduled date of trial. When the motion was denied, counsel filed a notice of appeal, lodged a partial transcript in this court, and insisted in the trial court, without success, that the court no longer had jurisdiction to try the case as scheduled.

The trial judge correctly denied the motion to postpone the trial for want of jurisdiction. It is true that after a trial court enters a final judgment disposing of a case on its merits, the docketing of an appeal in this court terminates the trial court's jurisdiction to reconsider the case. See *Estes* v. *Masner,* 244 Ark. 797, 427 S.W.2d 161 (1968); *Andrews* v. *Lauener,* 229 Ark. 894, 318 S.W.2d 805 (1958). But where, as here, there has been not a final judgment but only the denial of a motion to dismiss, the case is still pending in the court below and may proceed to trial unless this court issues a temporary writ of prohibition or takes some similar action. No such stay was issued in the present case.

Second, it is argued that the trial judge should have sustained the defendant's challenges for cause with respect to eight prospective jurors. It appears that during some period of time preceding Kellensworth's arrest about ten separate rapes had been committed in the southwest section of Little Rock. Before anyone had been identified as the perpetrator of any of the crimes, the police and the news media referred to the offender as the "southwest rapist." The succession of crimes received wide publicity. Apparently

when Kellensworth was taken into custody the police concluded he was the southwest rapist. Perhaps their conclusion was reported in the press. The record is not entirely clear about these matters.

During the individual voir dire of the veniremen it was brought out that eight of them had heard or read enough about the multiple rapes to suppose that Kellensworth was or might be the southwest rapist. None of those challenged for cause, however, were shown to have formed an opinion about Kellensworth's possible guilt or to possess anything except more or less vague information about the series of crimes and about accusations that may have been made. All of the eight veniremen stated in substance that they could lay aside what they had heard and try the case upon the evidence heard in the courtroom. The defense used seven of its twelve peremptory challenges to excuse the first seven of the challenged veniremen, but the eighth one became a member of the jury after the defense had exhausted its challenges.

The trial judge was right in refusing to excuse the jurors for cause. The Supreme Court has recognized the difficulty encountered in the selection of a jury to try a case that has been the subject of much discussion in the press. The Court holds that there is no requirement that jurors be totally ignorant of the facts involved: "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented at court." *Irvin* v. *Dowd,* 366 U.S. 717 (1961), which we followed in *Swindler* v. *State,* 267 Ark. 418, 592 S.W.2d 91 (1979), cert. denied 449 U.S. 1057 (1980). Here we find no violation of the principles announced in those cases. The appellant relies primarily on *Glover* v. *State,* 248 Ark. 1260, 455 S.W.2d 670 (1970), but there the trial judge's error was in refusing to excuse veniremen who said they had formed an opinion that could be removed only by evidence. That is not the situation here.

Third, it is argued that police officers should not have been allowed to describe the prosecutrix's identification of Kellensworth at a line-up. We recently examined our earlier decisions on this point and concluded that in circumstances like those presented in the case at bar the testimony is

permitted by the Uniform Rules of Evidence. *Martin* v. *State*, 272 Ark. 376, 614 S.W.2d 512 (1981).

Fourth, the prosecutrix testified that Kellensworth entered her home and raped and robbed her at about 4:30 a.m. on June 16. Kellensworth did not testify, but both his parents testified in his defense that someone brought him home at about 2:00 a.m. that morning. They said he was so drunk that he threw up on the rugs, that they spent the rest of the night cleaning up the mess, and that their son was at home until he left at noon. They understood that Mike Dean had driven him home, but that identification is not important.

Mike Dean was called by the State as a rebuttal witness. Over objections by defense counsel, Dean testified that at an earlier trial of this same case, which ended in a mistrial, he had appeared as a defense witness and had testified that he had been drinking beer with Kellensworth on the evening before the crimes in question, that around midnight they got a fifth of tequila, that Kellensworth got drunk, and that Dean took him home. Dean further testified at the trial below that his former testimony was false, that Kellensworth had asked him to tell the story, that they had made it up together, and that he had lied to help a friend. He conceded that he had committed perjury at the first trial, but had decided to tell the truth. He made no claim that Kellensworth's parents knew that his earlier testimony was false.

It is now argued that Dean's testimony was inadmissible as improperly putting Kellensworth's character in issue, as constituting proof of a specific instance of misconduct, and as attacking the credibility of the elder Kellensworths upon a collateral issue. No authority is cited to support the argument that Dean's testimony on rebuttal was inadmissible. The testimony was so clearly admissible that we doubt if any such authority could be found.

It is settled beyond question that a party's attempt to fabricate evidence is admissible, not merely as an admission under Uniform Evidence Rule 801 (d) (2) but as proof relevant to show his own belief that his case is weak. As one

court has said, in a case involving a fabricated alibi, "fabrication of evidence of innocence is cogent evidence of guilt." *Harvey* v. *United States,* 215 F. 2d 330 (D.C. Cir., 1954). In a case similar to the present one, involving the recantation of previous testimony about a fabricated alibi, the court held that the testimony was admissible not merely in rebuttal but as part of the prosecution's case in chief, a point we do not reach. *State* v. *Thompson,* 71 S.D. 319, 24 N.W.2d 10 (1946).

Wigmore states the principle as being based upon one of the simplest of inferences:

> It has always been understood — the inference, indeed, is one of the simplest in human experience — that a party's *falsehood* or *other fraud* in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause.

Wigmore, Evidence, § 278 (Chadbourn Rev., 1979). With particular reference to what we have here — the fabrication or manufacture of evidence by subornation and the like — Wigmore cites supporting cases from 27 jurisdictions, and none to the contrary. *Id.,* p. 137. The admissibility of Dean's testimony is not open to dispute.

Affirmed.