Pearl Gennette ANTHONY *v.* STATE of Arkansas

CR 97-655                                   967 S.W.2d 552

Supreme Court of Arkansas
Opinion delivered April 16, 1998
[Petition for rehearing denied May 21, 1998.*]

* GLAZE, J., would grant.

*Kiel & Goodson*, by: *John C. Goodson*, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

RAY THORNTON, Justice. Appellant Pearl Gennette Anthony was convicted of two counts of delivery of a controlled substance, cocaine, and sentenced to two consecutive thirty-year terms of imprisonment in the Arkansas Department of Correction. She does not challenge the sufficiency of the evidence to support her convictions. Instead, she argues that the trial court erred by (1) allowing the State to introduce certain rebuttal testimony, (2) admitting a bus manifest as a business record, and (3) improperly commenting on the evidence. We agree with the first point and reverse and remand for a new trial.

In her first point of appeal, appellant contends that the trial court erred during the rebuttal phase by permitting the State to

introduce portions of her testimony from her first trial, which ended in a mistrial, and the testimony of Holly Scott. Appellant elected not to testify at her second trial, and she alleges the introduction of this testimony was improper in two respects: (1) the introduction of her testimony from the first trial was, in effect, a direct comment on her failure to testify in the second trial, in violation of her Fifth Amendment privilege against self-incrimination; and (2) both her testimony and that of Ms. Scott were improper rebuttal.

During its case in chief, the State presented the testimony of Johnny Alexander, a detective with the Pine Bluff Police Department, who testified that he bought cocaine from appellant on two separate occasions on the evening of October 19, 1995. Detective Alexander testified that he and a confidential informant purchased crack cocaine from appellant at her home around 7:48 p.m. He further testified that around 11:30 p.m., he returned to appellant's home to make a second buy.

After the State rested, appellant presented the testimony of Faye Walker. Ms. Walker testified that, on the evening of October 19, 1995, she saw appellant in Idabel, Oklahoma, at Choctaw Bingo, a bingo parlor. On cross-examination, Ms. Walker testified that she did not know whether appellant won any money that night or how appellant traveled to the bingo parlor.

Appellant also presented the testimony of her son, Edmund Colbert, who testified that she left their residence at approximately two or three o'clock on the afternoon of October 19, 1995. Mr. Colbert testified that appellant told him she was "going up town," and then she would "probably go to bingo." He also testified that he was home that evening and that appellant returned home "a little after one."

Before the defense rested, the court advised appellant of her Fifth Amendment rights, and she choose not to testify. During the rebuttal phase, the trial court allowed the State to introduce testimony from appellant's first trial where she had testified that she was playing bingo in Idabel, Oklahoma, on the night she allegedly sold cocaine to Detective Alexander, that she won two mini pots that night, and that she rode a Sue Long Corporation

bus to the bingo parlor. Appellant objected to the use of her prior testimony by asserting that it was improper rebuttal, that it violated her Fifth Amendment right against self-incrimination, and that it was misleading and confusing. The trial court ruled that appellant's prior testimony was admissible for the purpose of rebutting the defense of alibi.

After the State read portions of appellant's testimony from her first trial, the trial court then permitted the State to introduce the testimony of Holly Scott, co-manager of Choctaw Bingo. Ms. Scott testified that their records showed that appellant neither won two mini pots nor rode the Sue Long bus to the bingo parlor that night.

We begin our review by addressing appellant's contention that the admission of her prior testimony amounted to a direct comment on her election not to testify in violation of her Fifth Amendment rights. This argument is without merit.

In *Harrison v. United States*, 392 U.S. 219 (1968), the Supreme Court considered whether the defendant's former testimony was improperly admitted at his second trial, following a reversal of his conviction in the former trial. The Court held that because the defendant was compelled to testify in the earlier case to respond to illegally obtained confessions, his testimony in that case violated his Fifth Amendment right against self-incrimination and could not be introduced in the second trial. *Id.* at 224-25. However, the Court specifically noted:

> In this case we need not and do not question the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings. A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him.

*Id.* at 222. *See also United States v. Houp*, 462 F.2d 1338 (8th Cir. 1972); *People v. Carlson*, 677 P.2d 390 (Colo. Ct. App. 1983); *Sherley v. Commonwealth*, 889 S.W.2d 794 (Ky. 1994); *State v.*

*Hunt*, 457 S.E.2d 276 (N.C. 1994); *Bryan v. State*, 837 S.W.2d 637 (Tex. Crim. App. 1992).

█ Based on the authorities cited above, we conclude that, by voluntarily testifying at her first trial, appellant waived her privilege against self-incrimination with respect to the testimony that she gave. The fact that appellant exercised her right to remain silent at the second trial does not preclude the use of her testimony given at the first trial, if it would otherwise be admissible. Accordingly, we turn to appellant's argument regarding the admissibility of the evidence during rebuttal.

Appellant contends that neither her prior testimony nor the testimony of Ms. Scott was proper rebuttal because it was not responsive to any evidence that she introduced in her second trial. Appellant argues that the rebuttal evidence did not contradict the testimony of Ms. Walker, the alibi witness; instead, Ms. Scott's testimony impeached appellant's prior testimony.

The State, however, asserts that the evidence was properly admitted as rebuttal in order to show that appellant's alibi was fabricated. The State relies primarily on *Kellensworth v. State*, 276 Ark. 127, 633 S.W.2d 21 (1982), in support of this proposition. In *Kellensworth*, the defendant did not testify, but his parents testified in his defense and established an alibi. *Id.* at 130, 633 S.W.2d at 23. The State called a rebuttal witness who admitted that he had testified about a false alibi during the defendant's previous trial, which had ended in a mistrial. *Id.* Defendant argued that the testimony of the rebuttal witness was inadmissible because it improperly put his character in issue and attacked the credibility of his parents upon a collateral issue. *Id.*

█ This court, noting that the defendant failed to cite any authority for his argument, held that the rebuttal testimony was "clearly admissible." *Id.* We stated:

> It is settled beyond question that a party's attempt to fabricate evidence is admissible, not merely as an admission under Uniform Evidence Rule 801(d)(2) but as proof relevant to show his own belief that his case is weak. As one court has said, in a case involving a fabricated alibi, "fabrication of evidence of innocence is cogent evidence of guilt." *Harvey v. United States*, 215

F.2d 330 (D.C. Cir., 1954). In a case similar to the present one, involving the recantation of previous testimony about a fabricated alibi, the court held that the testimony was admissible not merely in rebuttal but as part of the prosecution's case in chief, a point we do not reach. *State v. Thompson*, 71 S.D. 319, 24 N.W.2d 10 (1946).

Wigmore states the principle as being based upon one of the simplest of inferences:

> It has always been understood — the inference, indeed, is one of the simplest in human experience — that a party's *falsehood* or *other fraud* in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause.

Wigmore, Evidence, § 278 (Chadbourn Rev., 1979).

*Kellensworth*, 276 Ark. at 130-31, 633 S.W.2d at 23-24 (emphasis in original).

The State also cites *Flowers v. State*, 30 Ark. App. 204, 785 S.W.2d 242 (1990), where the court of appeals considered whether the trial court erred in admitting appellant's pretrial statement to police to rebut her plea of self-defense. The court of appeals upheld the admission of the evidence and stated that "[a]s a rule of general application, proof of an attempt to fabricate evidence of innocence, or other conduct amounting to an obstruction of justice, is admissible." *Id.* at 207, 785 S.W.2d at 243.

Under *Kellensworth* and *Flowers*, the evidence in question in the instant case was admissible during the State's case in chief. If the prosecution had presented appellant's prior testimony at that time, appellant would have had the opportunity to testify or to produce other evidence in support of her alibi. However, the State obtained an unfair advantage by introducing appellant's prior testimony after the defense had completed its presentation and appellant had waived her right to testify. Moreover, appellant's

prior testimony did not contradict any testimony offered by appellant in this proceeding.

We are mindful that the trial court has discretion to decide the propriety of evidence offered in rebuttal. *See Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996); *Schalski v. State*, 322 Ark. 63, 907 S.W.2d 693 (1995). However, genuine rebuttal is evidence offered in reply to new matters, *Schalski*, 322 Ark. at 67–68, 907 S.W.2d at 696, and we have, on occasion, disallowed evidence presented as rebuttal where the evidence was not responsive to the defense evidence. *See Landrum v. State*, 320 Ark. 8, 894 S.W.2d 933 (1995) (concluding it was error for the trial court to allow rebuttal evidence on a collateral matter elicited by the prosecutor during cross-examination); *Birchett v. State*, 289 Ark. 16, 708 S.W.2d 625 (1986) (disallowing evidence presented as rebuttal where the testimony impeached responses extracted by the prosecutor on cross-examination).

We conclude that neither appellant's prior testimony nor the testimony of Ms. Scott was proper rebuttal evidence. As noted above, Ms. Walker testified that she saw appellant at the bingo parlor on October 19, 1995. However, when the prosecutor asked Ms. Walker whether she knew if appellant won anything that night, she testified that she did not, and she also testified that she did not know how appellant traveled to the bingo parlor. The testimony presented by the prosecution during rebuttal did not contradict Ms. Walker's testimony or any other evidence presented by appellant. By introducing appellant's prior testimony, the prosecution created an opportunity to present Ms. Scott's testimony, which was not otherwise appropriate as rebuttal, in an effort to discredit appellant's alibi. Under these circumstances, we conclude that the introduction of this testimony during rebuttal constituted an abuse of the trial court's discretion and prejudiced appellant.

Appellant's second point for reversal is that the trial court erred in admitting into evidence the bus manifest because the prosecutor did not lay a sufficient foundation to admit the manifest under Ark. R. Evid. 803(6), the business records exception to

the hearsay rule. Because we have held that Ms. Scott's testimony was improper rebuttal, we need not address this issue.

For her final point on appeal, appellant contends that the trial court commented on the evidence while instructing the jury that a witness, Faye Walker, had violated Rule 615 of the Arkansas Rules of Evidence, the witness-exclusion rule. Specifically, appellant argues that, by instructing the jury as to the purposes of the rule, the trial court commented on the credibility of Ms. Walker, which is prohibited by Art. 7, Sec. 23, of the Arkansas Constitution.

■ This argument was not presented to the trial court and was not preserved for appeal. We have repeatedly held that in order to preserve an argument for appeal, the objection below must be specific enough to apprise the trial court of the particular error about which appellant complains. *Gibson v. State*, 316 Ark. 705, 875 S.W.2d 58 (1994). Furthermore, a party is bound on appeal by the scope and nature of the objections and arguments presented at trial. *Brown v. State*, 326 Ark. 56, 931 S.W.2d 80 (1996).

■ When the trial court announced that it intended to instruct the jury concerning the purposes of Rule 615, as set out in *Fite v. Friends of Mayflower, Inc.*, 13 Ark. App. 213, 682 S.W.2d 457 (1985), the appellant made a general objection. She did not, however, apprise the trial court of the argument she now makes on appeal; therefore, we do not address it.

For the reasons stated above, this case is reversed and remanded for a new trial.

ARNOLD, C.J., and GLAZE and IMBER, JJ., dissent.

TOM GLAZE, Justice, dissenting. I take serious exception to the part of the majority opinion that holds the trial court erred in allowing State rebuttal witness Holly Scott to testify, and in permitting the State to use appellant's earlier trial testimony to show she lied. Appellant claimed she was playing bingo in Oklahoma on the evening of October 19, 1995. Contrary to appellant's version of events, two police officers and their informant testified that she twice sold them cocaine on the same night.

At appellant's first trial, she took the witness stand and testified that, on October 19, 1995, at about 7:00 p.m., she caught a bus at the State Line, rode to Choctaw where she played bingo, and won two mini pots. She said she returned to the State Line that night at 11:30 p.m. where her car had been parked and drove home. Appellant's alibi contradicted the State's case-in-chief wherein Officers Ervin Dennis and Johnny Alexander and informant Vercina Lindsey testified appellant twice sold them cocaine on the evening of October 19 — at 7:48 p.m. and 11:38 p.m.

At appellant's second trial, the State presented its same case against appellant, but appellant chose not to testify in her own defense. Instead, she put her alibi defense before the jury by calling Faye Walker and Edmund Colbert, her son. Walker related that she had seen appellant on the evening in question at the bingo parlor. Appellant's son, Colbert, who resided with appellant, also asserted his mother went to play bingo at Choctaw on the evening in dispute, but his story became questionable on cross examination. The prosecutor asked Colbert whose car was parked in appellant's front yard on the evening of October 19, 1995, and whose license number was YEW 523. Colbert's response was that the car would have been his, but he had paid no attention to his license plate. Colbert claimed appellant, on October 19, 1995, had left home driving her car and stated that she would probably play bingo in Oklahoma. The State, however, submitted that license plate YEW 523 was appellant's.

Obviously, details of appellant's alibi defense were in dispute — for example, (1) whose car was in appellant's yard at the time the drug sales took place? (2) did appellant drive her car to Oklahoma to play bingo or did she take a bus? (3) did appellant go to Oklahoma on October 19, or were the officers and their informant telling the truth when they testified she sold them cocaine twice on the evening in controversy?

Our case law is clear that the State is entitled to rebut appellant's alibi by showing that it was fabricated. *See McCree v. State*, 280 Ark. 347, 658 S.W.2d 376 (1983). Here, the trial court properly concluded that the State had a right to rebut appellant's alibi

defense and that a part of that rebuttal involved the credibility of the witnesses presented.

This court has held that it is within the trial court's discretion to decide the propriety of evidence offered in rebuttal. *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996). Because appellant's alibi conflicted with the State's case and with significant details of her son's testimony, it was well within the trial court's discretion to allow the jury to have all versions of what was said to have occurred on October 19. How else could the jury determine whose story to believe?

Accordingly, the trial court allowed the State to call Holly Scott, co-manager of Choctaw Bingo, who testified that her business had no record of appellant winning a mini pot on October 19, 1995, nor was appellant's name listed on the bus manifest showing she had been a passenger on the bus appellant claimed she rode that night. The trial court also allowed the State to read relevant portions of appellant's earlier trial testimony where appellant claimed she drove her car to the State Line to board the bus to Oklahoma even though a car bearing her license plate had been seen in her front yard at the time officers said she had sold them cocaine.

In conclusion, the majority's decision allows appellant to present the part of the alibi defense she thinks favors her, but to exclude those versions that draw her defense into serious question. Once appellant asserted alibi as a defense, all evidence touching on that defense was relevant. Again, the trial court clearly did not abuse its discretion when determining the propriety and admissibility of portions of appellant's prior trial testimony and that of Scott's. I would affirm.

ARNOLD, C.J., and IMBER, J., join this dissent.