Cite as 2025 Ark. App. 439

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CR-24-723

| | |
|---|---|
| TONY JAMES HARRIS<br><div align="right">APPELLANT</div><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | **Opinion Delivered** September 24, 2025<br><br>APPEAL FROM THE GRANT COUNTY CIRCUIT COURT<br>[NO. 27CR-22-132]<br><br>HONORABLE STEPHEN L. SHIRRON, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

A Grant County jury convicted Tony James Harris of rape, Ark. Code Ann. § 5-14-103 (Repl. 2024), and second-degree sexual assault, Ark. Code Ann. § 5-14-125 (Repl. 2024). Two of his daughters, who were minors when the crimes occurred, were his victims. They testified against him. Another daughter testified for him. We refer to them as Eldest Daughter (ED), Middle Daughter (MD), and Youngest Daughter (YD). Because Harris does not challenge the sufficiency of the evidence, we abbreviate our discussion of the facts. *Grady v. State*, 2023 Ark. 91.

The Grant County Sheriff's Department learned in August 2022 that MD and YD had told others that Harris had sexually abused them when they were children. Both had since reached adulthood and moved out.

MD is the rape victim. She testified that Harris was controlling and physically abusive. Even when she was young—before twelve or thirteen—physical punishment did

not mean spankings; it meant punches, slaps to the face, or hitting the children with objects anywhere from their ankles to the backs of their necks. He picked MD up by her neck. When MD reached puberty, the abuse became sexual. Her mother made an appointment with a primary-care doctor because MD had been cutting herself. She never learned of any resulting prescription. But her parents started giving her two pills each morning. MD refused to take them from her mother because they made her groggy. Harris began administering them around 3:00 or 3:30 a.m. before he left for work.

MD and YD shared a bed. The jury heard that Harris would enter their bedroom every morning under the pretense of giving MD her medication. After he gave her the pills, he would wait. Then he would sexually abuse both of them. MD testified that he would always move his hands "super slow, as if he was scared to wake me up." She continued, "I think he thought that I was asleep."

Harris started with touching MD's breasts under her clothing. As the girls got older, he began touching YD's breasts as well. His abuse of MD escalated after he heard her admit to a doctor that she'd had sex with a peer. He had "a very big outburst" that left the doctor concerned about what was going on. After that, Harris would digitally penetrate MD each morning.

YD echoed MD's testimony about Harris's physical abuse and the sexual abuse of both girls in the mornings. She also testified that Harris sexually abused her one time in his bedroom. She had asked to use his phone. After praising her for losing weight, Harris slid his hand under her shorts and touched her vagina over her underwear.

2

Although both girls knew about Harris's abuse of the other, they never discussed the abuse while it was going on. But without needing to say why, they began showering in pairs, each girl standing guard while the other showered to make sure he couldn't come in.

In December 2013, Judy Harris, their mother, was diagnosed with cancer. She continued treatment until her death in March 2022. By then, all her children had married and left home. And after YD left, she and Judy had become estranged. YD would not let Judy be around YD's child, and Judy wanted to know why. They met for coffee, and YD told her about the abuse by Harris. Judy called ED. ED called MD. MD and YD testified that they both went to ED's house to discuss the disclosures.

Both issues on appeal relate in some way to that discussion, ED, and her testimony for Harris. MD testified that when she disclosed the abuse to ED, ED told her that Harris had molested her too, but that she was forgiving him because "family was what was important," especially with Judy dying. YD testified that she talked with ED on the front porch about the abuse, and ED had "acknowledged that it had happened to her" as well. But ED said her husband didn't know, and she wasn't planning to tell him.

Harris called ED in his defense. She denied having seen Harris sexually or physically abuse MD or YD, or having suffered abuse of either kind herself. She denied telling her sisters otherwise. In fact, she denied that YD disclosed sexual abuse to her at all. ED testified that when she lived in the Harris home, she never witnessed worse than a normal spanking.

She was living in the Harris home again, it turns out. ED, her husband, and their three minor children had moved in with Harris within a week of Judy's death. After the

3

State charged him in this case, the Arkansas Department of Human Services (DHS) opened a protective-services case involving the minors. According to ED, it had since been closed.

Harris meant to establish through Evangela Jackson, his next witness, that DHS closed the protective-services case because the abuse allegations against him were unsubstantiated. His first point on appeal challenges the court's ruling that she had no relevant testimony to give.

After the State objected on relevance grounds, the court let Harris proffer testimony the parties elicited without the jury present. Jackson testified that she worked for St. Francis Ministries, not DHS, as a therapist, not an investigator. She provided mental-health services to ED and other members of ED's family from February to August 2023. Jackson did not testify to anything she saw, heard, or learned at the Harris home, even through hearsay. Nor did she explain why DHS closed the protective-services case.

MD testified that although Harris physically abused her and YD before they reached puberty, the sexual abuse started afterward. All ED's children were eleven or younger when she testified. Assuming Jackson's testimony would have tended to show that Harris did not abuse his prepubescent grandchildren under DHS supervision while these charges loomed, we agree with the State that it would not have made "the existence of any fact that is of consequence" to determining whether he had abused his pubescent daughters years earlier more or less probable. *See* Ark. R. Evid. 401. The circuit court could not have abused its discretion by excluding her testimony. *Moore v. State*, 2023 Ark. App. 577, 680 S.W.3d 472.

Harris's other point challenges the court's decision to admit rebuttal testimony by MD and YD over his objection. MD testified that she had seen Harris inflict physical abuse on ED multiple times, contrary to ED's denial that she had suffered any. She told the jury Harris caught them fighting when ED was six or seven. Harris "began to punch [ED] in the side of the head and said, 'If you can fight like a man, I'll punch you like a man.'" As MD started to go further, Harris objected:

> DEFENSE COUNSEL: Your Honor, I'm going to object to this testimony. What's it got to do with what he's charged here with. Here's not charged with battery, he's charged with rape and sexual assault second. And we're talking about something that happened when they were five and six, way before these accusations.
>
> THE COURT: Overruled. It goes to credibility.

Harris argues that the victims' testimony did not respond to new matters presented by the defense, so it was not proper rebuttal testimony. *Gilliland v. State*, 2010 Ark. 135, 361 S.W.3d 279; *Anthony v. State*, 332 Ark. 595, 967 S.W.2d 552 (1998). That is not what he argued below, which we quoted above. The argument is not preserved. *Gilliland*, *supra*.

Affirmed.

TUCKER and MURPHY, JJ., agree.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.