Carlton Keith GOLDSMITH *v.* STATE of Arkansas

CR 89-115                                   782 S.W.2d 361

Supreme Court of Arkansas
Opinion delivered January 8, 1990

*Gibbons and Walker*, by: *David L. Gibbons,* for appellant.

*Steve Clark,* Att'y Gen., by: *Paul L. Cherry,* Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Carlton Keith Goldsmith, the appellant, was convicted of first degree murder and sentenced to 40 years imprisonment for killing Dusty Fowler, the two-year-old son of Goldsmith's living companion, Marsha Fowler Ogle. Goldsmith's sole point of appeal is that the court erred in refusing to grant a mistrial after erroneously allowing Clarence Curston to testify as a rebuttal witness. We find no error and affirm.

Marsha Ogle testified that on May 1, 1988, she and Goldsmith and her two children were living in a house on the Logan farm where Goldsmith was employed. Someone came to the door and asked for help in freeing a vehicle which had become stuck in the mud. Goldsmith used a pickup truck owned by his employer to pull the stuck vehicle out, but in the process the employer's truck became stuck. Goldsmith returned to the house. He and Ogle and Dusty Fowler went in Goldsmith's personal pickup truck to the Logan home on the farm to borrow a tractor to use in pulling Goldsmith's employer's truck out. Goldsmith drove the tractor, and Ogle drove Goldsmith's truck. Dusty got in the tractor with Goldsmith. They drove back to the house where they were staying and left Goldsmith's pickup. Then all three rode in the tractor to the site where the employer's truck was stuck. Once the truck was freed, Ogle was to drive it back to their house and switch to Goldsmith's pickup truck and then meet him at the Logan's where he would return the tractor.

Ogle testified further that Dusty accompanied Goldsmith in the tractor. On her way back to the house she took a wrong fork in the road and wound up at a cemetery where she could not turn the truck around because the transmission was jammed in a forward gear. Someone, who turned out to be Curston, came to help her. They got the truck into reverse gear and were able to turn it around. Ogle returned that truck to the house and then drove Goldsmith's truck to the Logan home. As she approached the Logan place, Goldsmith came toward her on foot holding Dusty who was apparently unconscious. Goldsmith told her Dusty had fallen and was hurt and to drive to the hospital. On the way he told her Dusty was not breathing.

Goldsmith's testimony about the day's activities was roughly the same as Ogle's up to the point when, after using the tractor to pull his employer's truck out of the mud, they started back to the house where they were staying. Goldsmith testified that Dusty was not with him in the tractor but was with Ogle. Before he got to the area of the cemetery, Ogle, who was driving Goldsmith's truck, had caught up behind the tractor. He said he looked back and could see Ogle whipping Dusty in the pickup truck. He stopped the tractor and let Dusty ride with him to Logan's. As they drove on, he was examining Dusty for bruises when he hit a rut, the tractor jumped, and Dusty wound up on the floorboard with an injury to his head. When he and Dusty got to the Logan home, Dusty was passing out. He and Ogle took Dusty to the hospital.

Curston was called as a rebuttal witness. He testified, over objection, that when he was helping Ogle with the truck transmission at the cemetery he did not see anyone with her.

Other testimony in the state's case in chief included that of a former assistant state medical examiner who performed an autopsy on Dusty's body. He stated that the body had bruises over the thoracic, abdominal, and shoulder areas. There was a skull fracture and edema of the brain. The brain expansion and concussion were the causes of death. Wounds on Dusty's extremities were consistent with defense wounds he would have gotten trying to protect himself. David Baker, a friend and co-worker of Goldsmith testified that he had worked with Goldsmith when Goldsmith and Ogle were living together on a farm in Texas. He said he had seen Goldsmith knock Dusty down, kick him, slap him, and put dirty diapers on his face. He was afraid of Goldsmith who could "get mad . . . if you set him off."

Goldsmith argues that Curston's testimony was not proper rebuttal testimony because Goldsmith takes the position that Dusty was in the tractor with him and not with Ogle when they approached the cemetery, thus Curston's testimony is not inconsistent with his. He contends Curston was called to confuse the jury and make it appear that Goldsmith was contradicting a "local" person. We find no merit in the argument. If Curston's testimony is consistent with that of Goldsmith, then the only possible error would be that it does not technically amount to

rebuttal evidence. We are not convinced that such an error, if it was one, was prejudicial. There is nothing to show that the jurors were confused. We do not reverse for an alleged error which is unaccompanied by a showing of prejudice. *Taylor* v. *State*, 299 Ark. 123, 771 S.W.2d 283 (1989); *Vasquez v. State*, 287 Ark. 468, 701 S.W.2d 357 (1985). We have no doubt that it was proper to deny the mistrial motion because that remedy is so drastic that it must appear to the court that the prejudice resulting from the alleged error is so great that the trial cannot, in fairness, be allowed to proceed. *Ruiz* v. *State*, 299 Ark. 144, 772 S.W.2d 297 (1989); *Combs* v. *State*, 270 Ark. 496, 606 S.W.2d 61 (1980).

Affirmed.

TURNER, J., not participating.