Gary LANDRUM *v.* STATE of Arkansas

CA CR 93-1143                                           887 S.W.2d 314

Court of Appeals of Arkansas
En Banc
Opinion delivered November 23, 1994

*Robert E. Irwin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant in this criminal case

was charged with committing the offense of murder in the first degree by stabbing Joseph Allen Franklin to death with a knife. After a jury trial, he was found guilty of murder in the second degree, fined in the amount of $12,500.00, and sentenced to twenty years in the Arkansas Department of Correction. From that conviction, comes this appeal.

For reversal, the appellant contends that the trial court erred in permitting rebuttal witnesses called by the State to testify concerning the character and reputation of the appellant for carrying weapons. We find no error, and we affirm.

The record shows that the appellant relied on the defense of justification at trial, and produced evidence to show that the victim was an aggressive person who was the aggressor in the incident which resulted in his death. After the appellant rested his case at trial, the State called two rebuttal witnesses. The first witness, Belinda Norman, testified that she had personal knowledge that the appellant carried a pocketknife. The appellant failed to object to this testimony. Subsequently, the State asked Marty Stewart whether he had personal knowledge of the appellant ever carrying a weapon. Mr. Stewart answered that he had seen the appellant carrying "a knife that he always has in his pocket."

Reduced to its essential terms, the appellant's argument is that evidence of his character and reputation should not have been admitted at all because the appellant never put his character and reputation in issue. We disagree with the appellant's argument because the record before us indicates that the appellant did, in fact, put his character and reputation in issue by testifying that "I usually don't even carry a knife." Arkansas Rule of Evidence 404(a)(1) provides that evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except for evidence of a particular trait of his character offered by an accused, or by the prosecution to rebut the same. In the case at bar, the appellant put his character and reputation for peacefulness in issue by testifying that he usually did not even carry a knife. See Rowdean v. State, 280 Ark. 146, 655 S.W.2d 413 (1983). Given the appellant's testimony, we cannot say that the trial court erred in permitting the rebuttal testimony offered by the State, and we affirm.

Affirmed.

PITTMAN, MAYFIELD and ROGERS, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree with the result reached by the majority opinion in this case. The opinion states that "reduced to its essential terms, the appellant's argument is that evidence of his character and reputation should not have been admitted at all because the appellant never put his character and reputation in issue." The opinion then recognizes that Ark. R. Evid. 401(a)(1) provides that evidence of character, or a trait of character, is not admissible to prove that the person acted in conformity therewith on a particular occasion unless such evidence has been "offered by an accused, or by the prosecution to rebut the same." The majority opinion then concludes that "in the case at bar, the appellant put his character and reputation for peacefulness in issue by testifying that he usually did not even carry a knife."

My first problem is with the evidence relied upon by the majority opinion. There was no dispute about the fact that appellant and the victim became involved in an altercation at a park and that it was witnessed by several people. Also, there is no dispute about the fact that the appellant had a knife and that he cut the victim with the knife. However, to understand the issue involved, I think it is important to know that there is evidence that the appellant and the victim had been involved in arguments and fights prior to the incident in which the victim was killed. And there is evidence that on the date of the last incident, the appellant had told some of the people who were eating and drinking in the park that he was tired of the trouble the victim had been giving him, that the victim had "whup my ass two weekends in a row," and that he had a knife with the victim's name on it. Moreover, there is evidence that the appellant was "swinging" the knife around and that the witnesses knew there was going to be trouble when they saw the victim come into the park.

The appellant testified on direct examination that he had a regular pocket knife with him in the park and in response to the question, "Is this something you usually carried with you?" the appellant answered, "Yeah, just to cut wire or something a little small." This was followed by appellant's description of the incident:

BY MR. IRWIN [Defense counsel]:

Q. All right. Now, then, when he — the first movement that you said he made towards you, did you see any weapon in his hand?

A. I didn't have time to see nothing. he run up on me so fast coming towards me like that and as soon as I turned around, boom (demonstrating).

Q. Okay. Now, then, when did you pull your knife?

A. When I pushed him back and retched [sic] in my pocket, when I was going back with his head back there trying to get him off of me, to keep him from hitting me. That's when I went in my pocket.

Q. Is that when you stuck the knife in his chest?

A. Well, I was intention [sic] to hit him in the stomach; but everything happened so quick.

Q. Now, was it your intention to kill Joseph Franklin or just get him off of you?

A. Just to get him off of me. I didn't bother him when he was on the ground.

On recross-examination the following occurred:

BY MR. KENNEDY [Prosecutor]:

Q. I want to be real clear on one thing. You said —you told me that you usually don't carry a knife. Is that correct?

A. Yeah, sometime. Sometime I do and sometime I don't. Sometime I can be at home and leave it and sometime I can be at home and take it with me.

Q. And, I asked you why you didn't shut it and you said, "I usually don't carry a knife." Is that correct?

BY MR. IRWIN: Judge, this is not proper re-direct examination. I didn't go into any of those things.

BY THE COURT: I'll sustain that. That's been covered. Anything else, Gentlemen, of this witness?

BY MR. IRWIN: No, sir.

BY THE COURT: All right, sir, you may step down.

BY THE WITNESS: (He steps down)

BY THE COURT: Call your next witness.

BY MR. IRWIN: One moment, please.

WHEREUPON, there was a short pause.

BY MR. IRWIN: Defense rests, Your Honor.

BY THE COURT: Does the State have any rebuttal?

BY MR. KENNEDY: Your Honor, may we approach?

BY THE COURT: All right.

(Side-Bar Conference, outside the hearing of the Jury)

BY MR. KENNEDY: Your Honor, the Defendant has testified that he usually does not carry a knife. He has said that from the stand; and I can recall every one of those people to say that he usually does carry a knife; that he is almost always armed. I think he opened the door; and I think I can call them back in.

BY THE COURT: I suppose that's right.

(End of Side-Bar)

BY THE COURT: Call your witness.

BY MR. KENNEDY: Belinda Faye.

WHEREUPON BELINDA FAYE NORMAN, being called in rebuttal, and having been duly sworn to tell the truth, the whole truth, and nothing but the truth, testified on oath as follows:

DIRECT EXAMINATION

BY MR. KENNEDY:

Q. Would you please state your name again for the Court?

A. Belinda Faye Norman.

Q. Ms. Norman, do you know Gary Landrum?

A. Yes, sir.

Q. Do you know —

BY MR. IRWIN: Your Honor, I want to approach the Bench myself. I — I've been thinking about this.

(Side-bar conference, outside the hearing of the Jury)

BY MR. IRWIN: This goes to reputation evidence and the bad reputation; and I've not put his good reputation into evidence.

BY MR. KENNEDY: No, but he's put in the reputation that he —

BY THE COURT: You've put in character in terms of a victim and an accused and who was the aggressor.

BY MR. IRWIN: Yeah, but he's talking about a character trait of carrying a weapon and I've not put anything in there showing he's a good fellow and not carry any weapon [sic].

BY MR. KENNEDY: He said — he said —

BY THE COURT: Well, I'll overrule that. I think he can proceed in this manner.

BY MR. IRWIN: Okay.

(End of Side-Bar)

BY MR. KENNEDY:

Q. Do you know Gary Landrum?

A. Yes, sir.

Q. How long have you known Gary Landrum?

A. All through school and everything. We growed up together.

Q. Do you know Gary Landrum's reputation in the community?

A. Yes, sir, some of it.

Q. Do you know Gary Landrum's reputation as to whether or not he carries — he'll — he'll often carry a weapon?

BY MR. IRWIN: Now, Your Honor, I'm going to have to object for a different reason; and —

(Side-Bar Conference, outside the hearing of the Jury)

BY MR. IRWIN: —the reason this time is this is not the same type of material. This is reputation evidence; and hadn't [sic] got anything to do with actually carrying a weapon or rebuttal of whether he carries or not carries.

BY THE COURT: Are you trying to elicit from her that she knows he does carry a weapon of her own personal knowledge?

BY MR. KENNEDY: That's right; that he carries a weapon all the time.

BY THE COURT: Why don't you ask her that rather than this other[?]

BY MR. IRWIN: I want the Court to instruct the Jury that those first questions need to be disregarded; that those are improper questions.

BY THE COURT: I sustained your objection.

(End of Side-Bar)

BY MR. IRWIN: Okay; but I'm going to ask the Court to admonish the Jury.

BY THE COURT: Well, the question was not proper, and I sustained your objection.

BY MR. IRWIN: All right.

BY MR. KENNEDY:

Q. Do you know —

BY MR. IRWIN: Note my objection.

Q. —whether or not Gary Landrum is known to carry weapons?

BY MR. IRWIN: Now, Your Honor, I'm going to object again. That's exactly the same — the same —

BY THE COURT: It has to be of her own personal knowledge.

BY MR. KENNEDY:

Q. Do you have any personal knowledge that Gary Landrum is known to carry weapons around his person?

BY MR. IRWIN: The same objection, Your Honor. We are talking about known and that's reputation.

BY MR. KENNEDY: No, sir, Your Honor. We are talking about him opening up the door saying that he usually doesn't carry —

BY THE COURT: Well, you can ask what she knows of her own personal knowledge; and not what someone has told her.

BY MR. IRWIN: I would ask the Court to admonish the Prosecutor to quit asking reputation evidence. I've not put that in issue.

BY THE COURT: It has to be something she has personal knowledge of.

BY MR. KENNEDY:

Q. Do you have any personal knowledge of this man ever carrying a weapon?

A. A pocket knife.

Q. Okay. So, you know Gary — Gary Landrum as a person who carries a knife?

BY MR. IRWIN: Now, Your Honor, I'm going to object to that. That's not only leading; but it is improper and I ask the Court to admonish the Jury not to pay any attention to it.

BY THE COURT: I'll sustain that. Ladies and Gentlemen, you will disregard that last comment by the Prosecutor.

BY MR. KENNEDY: That's all I have of this witness, Your Honor.

BY THE COURT: Mr. Irwin?

BY MR. IRWIN: No questions.

BY THE COURT: All right, ma'am, you may step down.

BY THE WITNESS: (She steps down)

BY THE COURT: Is she free to go?

BY MR. KENNEDY: Yes, sir, Your Honor.

BY THE COURT: All right, ma'am, you are free to go. Call your next witness.

BY MR. KENNEDY: Call Marty Stewart.

WHEREUPON, MARTY STEWART, being called in rebuttal and having previously been sworn to tell the truth, the whole truth, and nothing but the truth, testified on oath as follows:

### DIRECT EXAMINATION

BY MR. KENNEDY:

Q. Do you have personal knowledge of Gary Landrum ever carrying a weapon?

A. Uh, huh, seen him with a weapon a couple of times, a knife that he always has in his pocket.

Q. Any other type of weapons?

A. No. A bullet — a bullet shell.

Q. A what?

A. A bullet shell.

BY MR. IRWIN: Your Honor, I want to approach the

Bench. I — I was so smitten by that that I didn't have time to object.

(Side-Bar Conference, outside the hearing of the Jury)

BY. MR. IRWIN: The testimony he was going to rebut was that my man said he carried a knife part of the time and he was going to prove he carried a knife all the time. He's asked this young man if he has ever seen him carrying a weapon; and that's not to rebut — that's not to rebut what he said. The question is objectionable in that form. It is not rebuttal; and I ask the Court to admonish the Jury not to consider that answer.

BY THE COURT; I'll deny that. I'll overrule your objection.

BY MR. IRWIN: Note my objection.

(End of Side-Bar)

BY MR. KENNEDY: Your Honor, I have nothing further of this witness.

I agree with the appellant's argument that "the trial court erred in permitting the State to produce rebuttal witnesses to testify about the character and reputation of the defendant for carrying weapons where the defendant had not offered any character or reputation witnesses to show his good character and reputation." The majority opinion holds that appellant "put his character and reputation in issue by testifying that 'I usually don't even carry a knife.'" Actually, the appellant did not claim that he *never* carried a knife. The above quotation from the prosecutor's recross-examination clearly shows the appellant testified that "sometime" he carries a knife and "sometime I don't." But the crucial point is that no witness testified in response to a question by defense counsel that the appellant was a peaceful man, or had a reputation for peacefulness. Thus, I simply cannot agree with the majority opinion's statement that "the appellant put his character and reputation for peacefulness in issue by testifying that 'I usually don't even carry a knife.'"

The case of *Rowdean* v. *State*, 280 Ark. 146, 655 S.W.2d 413

(1983), cited by the majority does not, in my view, support the majority decision. In that case, the appellant was asked on cross-examination if she ever carried a knife, and she said, "No." The opinion says that the trial court was correct in refusing to then allow for impeachment purposes evidence that the appellant had pulled a knife on someone on an occasion about a month before the killing for which she was on trial. However, the opinion says that the trial court erred in allowing this evidence as probative of who the aggressor was in the death for which the appellant was on trial. The opinion states:

> That, of course, is evidence of a character trait. Karleene Rowdean had not placed her general character in evidence. Nor had she offered any evidence of her character for peacefulness, or the victim's for violence. *See Halfacre* v. *State*, 277 Ark. 168, 639 S.W.2d 734 (1982). If the State could offer such evidence as it did, then, in effect, it could offer such evidence in its case in chief. The only possible justification for such a proposition is a statement in Weinstein that reads:
>
>> Evidence of specific acts is permissible to prove character pursuant to Rule 405(b) in cases in which the character of a person is an essential element of a charge, claim or defense. 2 WEINSTEIN'S EVIDENCE par. 405[4] (1982).
>
> While Karleene Rowdean did plead self-defense, or justification, we do not find that permits the State to offer evidence of specific instances of prior misconduct to show she may have been the aggressor. It was error to do so because her character is not an essential element of her claim of self-defense.

280 Ark. at 148-49, 655 S.W.2d at 414-15.

So, rather than support an affirmance of the case at bar, I think *Rowdean* supports a reversal of this case. *See also West* v. *State*, 265 Ark. 52, 576 S.W.2d 718 (1979). Here, the State did not offer the testimony of Belinda Norman or Marty Stewart in its case in chief but waited until the appellant had rested and then called these witnesses in rebuttal and appellant's counsel objected because this was evidence "about a character trait of

carrying a weapon and I've not put anything in there showing he's a good fellow and not carry any weapon." [sic]

In *McKinney* v. *Rees*, 993 F.2d 1378 (9th cir. 1993), the appellant had been convicted of murder in a state court. The federal court of appeals affirmed a federal district court grant of habeas corpus relief. The appellate court said there "was no permissible inferences the jury could have drawn from evidence of the appellant's possession and fascination of knives." *Id.* at 1384. It then quoted from another case as follows:

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish the probability of his guilt. . . . The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.

*Michelson* v. *United States*, 335 U.S. 469, 475-76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948) (footnotes omitted).

*Id.*

Therefore, I dissent from the affirmance of appellant's judgment of conviction and would reverse and remand for new trial.

PITTMAN and ROGERS, JJ., join in this dissent.

JUDITH ROGERS, Judge, dissenting. I join in the dissenting opinion offered by Judge Mayfield, but I write separately to emphasize one other point.

As indicated by Judge Mayfield's opinion, the appellant's character for peacefulness was not put in issue by testimony that he "usually did not even carry a knife." Of further significance, is that this testimony was elicited from appellant on cross-exam-

ination. We have recognized that when a witness testifies on direct examination that he has not committed collateral acts of misconduct, that testimony may be contradicted by extrinsic evidence. However, it is also well settled that, when a witness is cross-examined on a matter collateral to the issue being tried, his answer cannot be contradicted by the party putting the question. *Kellogg v. State*, 37 Ark. App. 162, 827 S.W.2d 166 (1992). Here, the appellant's testimony about carrying a knife was made in response to questioning by the State on cross-examination. Given the State's further attempt to clarify that testimony on recross-examination, this case reveals what I consider an improper attempt by the State to impeach by contradiction when it was permitted to impugn that testimony with rebuttal testimony.

PITTMAN, J., joins in this dissent.