Gary LANDRUM *v.* STATE of Arkansas

CR 94-1387                                    894 S.W.2d 933

Supreme Court of Arkansas
Opinion delivered March 20, 1995

*Robert E. Irwin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This case was first reviewed by the Arkansas Court of Appeals. *See Landrum* v. *State*, 47 Ark. App. 165, 887 S.W.2d 314 (1994). The Court of Appeals equally divided in an *en banc* decision with three judges voting to affirm and three judges voting to reverse. We granted review pursuant to Ark. Sup. Ct. R. 1-2(f).

On the evening of May 30, 1992, appellant Gary Landrum and the victim, Joseph Franklin, had a fight in James Park in Russellville. Prior to the fight, Landrum was seen waving his pocket knife and was heard by at least two witnesses to say that it had Joseph Franklin's name on it. He had the knife open and in his pocket when Franklin arrived. During the fight, Landrum stabbed Franklin in the chest with the pocket knife. Franklin died as a result of the stab wound.

Landrum was charged with first degree murder, and at the trial of the charge he asserted a defense of justification. When he took the stand in his own defense, he stated that the stabbing in the chest was unintentional though he meant to stab Franklin in the stomach. During initial cross-examination, he told the prosecutor that he usually did not carry a knife. On recross-examination the following occurred:

> PROSECUTOR: I want to be real clear on one thing. You said — you told me that you usually don't carry a knife. Is that correct?

> LANDRUM: Yeah, sometime. Sometime I do and sometime I don't. Sometime I can be at home and leave it and sometime I can be at home and take it with me.

After the defense rested, the prosecutor sought to present rebuttal testimony to Landrum's testimony that he usually did not carry a knife which, the prosecutor contended, opened the door to such proof. The trial court agreed. The prosecutor called

his first rebuttal witness, Belinda Faye Norman, and at that point the following ensued:

PROSECUTOR: Ms. Norman, do you know Gary Landrum?

NORMAN: Yes, sir.

PROSECUTOR: Do you know —

DEFENSE COUNSEL: Your Honor, I want to approach the Bench myself. I — I've been thinking about this.

(Side-Bar Conference, outside the hearing of the Jury)

DEFENSE COUNSEL: This goes to reputation evidence and the bad reputation; and I've not put his good reputation into evidence.

PROSECUTOR: No, but he's put in the reputation that he —

BY THE COURT: You've put in character in terms of a victim and an accused and who was the aggressor.

DEFENSE COUNSEL: Yeah; but he's talking about a character trait of carrying a weapon and I've not put anything in there showing he's a good fellow and not carry any weapon.

PROSECUTOR: He said — he said —

BY THE COURT: Well, I'll overrule that. I think he can proceed in this manner.

DEFENSE COUNSEL: Okay.

(End of Side-Bar)

PROSECUTOR: Do you know Gary Landrum?

NORMAN: Yes, sir.

PROSECUTOR: How long have you known Gary Landrum?

NORMAN: All through school and everything. We growed up together.

PROSECUTOR: Do you know Gary Landrum's reputation in the community?

NORMAN: Yes, sir, some of it.

PROSECUTOR: Do you know Gary Landrum's reputation as to whether or not he carries — he'll — he'll often carry a weapon?

DEFENSE COUNSEL: Now, Your Honor, I'm going to have to object for a different reason; and —

(Side-Bar Conference, outside the hearing of the Jury)

DEFENSE COUNSEL: — the reason this time is this is not the same type of material. This is reputation evidence; and hadn't got anything to do with actually carrying a weapon or rebuttal of whether he carries or not carries.

BY THE COURT: Are you trying to elicit from her that she knows he does carry a weapon of her own personal knowledge?

PROSECUTOR: That's right; that he carries a weapon all the time.

BY THE COURT: Why don't you ask her that rather than this other.

DEFENSE COUNSEL: I want the Court to instruct the Jury that those first questions need to be disregarded; that those are improper questions.

BY THE COURT: I sustained your objection.

(End of Side-Bar)

DEFENSE COUNSEL: Okay, but I'm going to ask the Court to admonish the Jury.

BY THE COURT: Well, the question was not proper, and I sustained your objection.

DEFENSE COUNSEL: All right.

The State proceeded to ask for reputation testimony a second time, and defense counsel objected again and was sustained. The trial court admonished the jury. Then the State queried:

PROSECUTOR: Do you have any personal knowledge of this man ever carrying a weapon?

NORMAN: A pocket knife.

PROSECUTOR: Okay. So, you know Gary — Gary Landrum as a person who carries a knife?

Again, there was an objection, and the trial court sustained it and admonished the jury. The prosecutor then called his second rebuttal witness, and this colloquy occurred:

PROSECUTOR: Do you have personal knowledge of Gary Landrum ever carrying a weapon?

STEWART: Uh, huh, seen him with a weapon a couple of times, a knife that he always has in his pocket.

The jury subsequently found Landrum guilty of second degree murder. He was sentenced to 20 years in prison and fined $12,500.

■ Landrum urges on appeal that the trial court erred in permitting the State to call rebuttal witnesses regarding his character and reputation when he had not placed his character in issue. We initially dispose of one facet of Landrum's argument. The trial court was assiduous in sustaining defense counsel's objections to reputation testimony and in admonishing the jury that questions about general reputation would not be allowed. There, accordingly, is no basis for error on the reputation aspect.

We do conclude, however, that the trial court erred in allowing rebuttal testimony on whether Landrum ever carried a pocket knife. Our primary reason for assessing error is found in Ark. R. Evid. 404(a)(1), which reads:

(a) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible

for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same.

It is clear in this case that Landrum did not offer evidence of his good character or of a particular character trait, and we have stated that the defendant must first raise the character issue for any rebuttal by the State to transpire. *See Spohn* v. *State*, 310 Ark. 500, 837 S.W.2d 873 (1992), *citing McCormick on Evidence*, Vol. I § 190, p. 186 (1992). Specifically, Landrum presented no testimony to the effect that he was a good man because he carried a knife sometimes and not all of the time. The fact that he *usually* did not carry a knife or *sometimes* did not carry a knife was a fact elicited by the prosecutor on cross-examination. It runs counter to the rule for the prosecutor to extract a comment from the accused and then attempt to disparage that testimony by rebuttal evidence.

We held in a similar case that it was error for the trial court to permit rebuttal evidence that the defendant had previously pulled a knife on someone. *See Rowdean* v. *State*, 280 Ark. 146, 655 S.W.2d 413 (1983). In *Rowdean*, even though the State was attempting to rebut the defendant's assertion that she never carried a knife, we stated that this evidence was impermissible because the defendant's character was not an essential element of her claim of self-defense. Similarly, in the case before us Landrum's character had not been placed in issue and a peaceful disposition was not an essential element for his claim of self defense. *See West* v. *State*, 265 Ark. 52, 576 S.W.2d 718 (1979). The State, accordingly, was attempting to impeach him by extrinsic evidence on a collateral matter elicited on cross-examination which was clearly improper. *Sutton* v. *State*, 311 Ark. 435, 844 S.W.2d 350 (1993); *Garst* v. *Cullum*, 291 Ark. 512, 726 S.W.2d 271 (1987).

Having concluded that there was error, we turn next to the question of whether this error affected Landrum's substantial rights. *See* Ark. R. Evid. 103(a). We do not believe that it did. In response to the question of whether Landrum ever carried a weapon, Belinda Faye Norman answered: "A pocket knife."

In response to the same question, Marty Stewart said: ". . . seen him with a weapon a couple of times, a knife that he always has in his pocket." But Landrum himself had already testified that he sometimes carried a knife and that he had his knife on the night in question and had used it to stab Franklin. The rebuttal testimony, therefore, adds little to what Landrum has previously admitted.

Moreover, testimony by Marty Stewart that Landrum always carried a pocket knife with him appears of little significance and relevancy in this case. Many people carry pocket knives. The knife in question was described by one witness, Beverly Henson, as "[s]mall, like a fishing knife or pocket knife." A second witness, Michael Rhodes, confirmed that description. Had the rebuttal testimony been more significant, we would feel differently. In *West v. State, supra,* for example, we held that improper proof from rebuttal witnesses that defendant had shot an individual four years before was reversible error. And, as already referenced, in *Rowdean v. State, supra,* improper rebuttal testimony that the defendant had previously pulled a knife on someone else was highly prejudicial. Here, though, we are convinced that the testimony by the rebuttal witnesses had minimal impact, if any, in establishing that Landrum suffered from a bad character trait. *See Goldsmith v. State,* 301 Ark. 107, 782 S.W.2d 361 (1990).

We hold that the rebuttal witnesses' testimony did not affect the substantial rights of Landrum.

Affirmed.