Antonio WILLIAMS, Kendrick Gillum, and
Demarco T. Wilson *v.* STATE of Arkansas

CR 98-256 992 S.W.2d 89

Supreme Court of Arkansas
Opinion delivered June 17, 1999

*Donald A. Forrest,* for appellants Williams and Gillum.

*Bart Ziegenhorn,* for appellant Wilson.

*Winston Bryant,* Att'y Gen., by: *Vada Berger,* and *C. Joseph Cordi Jr.,* Ass't Att'ys Gen., for appellee.

R OBERT L. BROWN, Justice. This is the second time that the appeals of appellants Antonio Williams, Kendrick Gillum, and Demarco T. Wilson from capital-murder convictions have been submitted to this court for decision. On November 19, 1998, their appeals were submitted, and we halted consideration after Williams and Gillum filed a petition for error *coram nobis.* We granted the petition for all three appellants and reinvested the trial court with jurisdiction to hear the matter. *See Williams v. State,* 335 Ark. 453, 983 S.W.2d 407 (1998) *(per curiam).* The error *coram nobis* petition alleged that another person had confessed to the crime. On April 27, 1999, the trial court denied the petition for the writ.

We now consider the appellants' original appeals from the judgments of conviction for capital murder and their sentences for life imprisonment without parole. Various points are raised on behalf of the three appellants, including insufficiency of the evidence. We conclude that the points do not merit reversal of the judgments, and we affirm.

On February 1, 1997, Frederick Ellis and Charles Newsome were driving in Newsome's Cadillac automobile, and they

stopped by his home at the Mayfair Apartments in West Memphis so that Newsome could shower and change clothes. Newsome and Ellis left the Mayfair Apartments in the Cadillac between 7:30 and 8:00 p.m. and turned onto McAuley Street. Before they could complete the turn, gunfire erupted, and Newsome was shot in the back and arm. Ellis grabbed the wheel, and the Cadillac struck another car parked on the street. Ellis managed to drive the car back to Newsome's mother's house and to telephone 911 for assistance. Newsome bled to death from his wounds. The three appellants were charged with capital murder, and a four-day trial ensued. Following the trial, all three appellants were found guilty, convicted, and sentenced.

## I. Sufficiency of the Evidence

■ The three appellants now challenge the sufficiency of the evidence and the trial court's denial of their motions for a directed verdict. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. See Freeman v. State, 331 Ark. 130, 959 S.W.2d 400 (1998); Williams v. State, 329 Ark. 8, 946 S.W.2d 678 (1997). In considering a denial of a motion for directed verdict, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. See Freeman v. State, supra. The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. See Freeman v. State, supra; Union Pac. R.R. Co. v. Sharp, 330 Ark. 174, 952 S.W.2d 658 (1997). Substantial evidence is defined as "evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond suspicion or conjecture." Esry v. Carden, 328 Ark. 153, 156, 942 S.W.2d 846, 847 (1997). In such situations, the weight and value of testimony is a matter within the exclusive province of the jury. See Union Pac. R.R. Co. v. Sharp, supra.

### a. Demarco T. Wilson

We first review the evidence presented against Demarco T. Wilson. Frederick Ellis, the passenger in the car with Newsome, identified the three appellants at trial as the shooters. Ellis further

testified that he had known the three appellants "pretty much" his entire life. Following the murder, he gave three different statements to police officers — a short one immediately after the shooting, a second one the same night but a few hours later, and a third one five days later. In the first statement, he said there were three or four young black males who were the shooters, but he did not give any names. In the second statement, he identified appellants Antonio Williams and Kendrick Gillum as two of the perpetrators. He added that he had seen Kevin Johnson and Darnell Troup, witnesses at trial, drive by immediately before the shooting and that their car was in front of the Cadillac at the time of the shooting. Ellis identified two more perpetrators in his third statement, one of whom was appellant Demarco T. Wilson.

At trial, Ellis testified that two of the three appellants he saw had handguns and that they were standing by the manager's office of the Mayfair Apartments from where the shots were coming. He also changed his story and said that he had viewed the appellants out of the window on the driver's side of the car and not the passenger's side. To explain this contradiction, Ellis said that he was confused and distraught the night of the murder when he gave the second statement. He testified that as he and Newsome turned out of the parking lot onto McAuley Street, the appellants began shooting, and the shots came from behind the car.

Kevin Johnson, a witness who was riding with Darnell Troup in a car in front of Newsome and Ellis, testified that he knew the three appellants and saw them with another person he could not identify standing beside the Mayfair Apartments. He stated that one of them had a rifle on his shoulder and that he heard shots soon after his car passed the three men. Darnell Troup, who was driving the car, testified that he heard shots near the back of the apartments, which caused him to speed up and travel to his cousin's house.

Michael Lewis also testified that he was just in front of the Cadillac and saw three black men walk from behind the manager's office at the Mayfair Apartments, step onto the back porch, and begin shooting at Newsome's Cadillac. He testified that one of the men raised a rifle and the other two brought out pistols and

that the combined shots lasted a good fifteen seconds. Lewis also testified that the passenger in the Cadillac pushed Newsome over in the driver's seat and sped away.

Mark Welch testified that he knew Demarco Wilson and that Wilson's girlfriend lived at the Mayfair Apartments. Welch said that he heard the shots and came out of the building when the police officers arrived. He testified that "when they [police officers] took him [Wilson] out to the car, he acted like he was happy and stuff, smilin." But when Charles Newsome's sister arrived, he looked "spooked." He stated that Wilson was trying to hide behind him and some others. He also testified that at least fifteen to sixteen shots had been fired.

The State further produced twenty-five shell casings found at the scene, photographs of the bullet marks on the Cadillac, and photographs of the bullet wounds on the victim as well as other witnesses' testimony whose homes had been shot during the incident. Witnesses also testified to the multitude of bullets fired. The Medical Examiner, Dr. Frank Joseph Peretti, testified that Newsome died from two wounds — one in the back and a second in the forearm. He testified that there was no evidence of close-range firing or gunpowder residue on the skin surrounding the wounds.

Officer Regina Meek of the West Memphis Police Department testified that she recovered shell casings by the manager's office of the Mayfair Apartments from both a semi-automatic weapon and a revolver. She also testified that there were bullet holes in the back window of Newsome's Cadillac and damage to the right side of the car from gunfire. Detective Kent Mitchell of the West Memphis Police Department testified that there were five bullet holes in the Cadillac located at the driver's side door, the rear glass, the back quarter panel, the left-hand side of the trunk, and the back bumper. Officer Bryn Ridge, also of the West Memphis Police Department, testified that he found three bullet holes located in the front seats and the armrest between the seats.

Viewing this evidence in *toto* and in the light most favorable to the State, we find substantial evidence of Wilson's guilt. Wilson's primary argument in opposition to this conclusion is an

attack on the credibility of Frederick Ellis, who was the only witness who identified Wilson as a shooter. The attack is premised on the inconsistencies in Ellis's testimony compared to his statements to the police and the testimony of other witnesses. The major inconsistencies that the defense points to are whether there were three or four perpetrators, whether Ellis saw the three appellants through the passenger's or driver's window, whether all three perpetrators had guns, and the fact that he did not name Wilson until he gave his third statement to police officers.

 This court, though, does not attempt to weigh the evidence or assess the credibility of witnesses. That lies within the province of the trier of fact. *See Harris v. State*, 331 Ark. 353, 961 S.W.2d 737 (1998). Moreover, inconsistent testimony does not render proof insufficient as a matter of law, and one eyewitness's testimony is sufficient to sustain a conviction. *See id.*; *Rawls v. State*, 327 Ark. 34, 937 S.W.2d 637 (1997). Wilson has presented us with no valid reason to disregard the jury's assessment of Ellis's credibility. We affirm the trial court's denial of the directed-verdict motion. We hold that substantial evidence to support Wilson's judgment of conviction does exist.

*b. Antonio Williams and Kenneth Gillum*

 With respect to the State's evidence amassed against Antonio Williams and Kenneth Gillum, it was the same evidence for the most part already discussed in relation to Demarco T. Wilson, which we held was substantial. The State, however, first contends that although Williams made a motion for directed verdict at the close of the State's case and renewed it at the close of his case, he did not renew his motion at the close of Gillum's and Wilson's cases. Thus, according to the State, Williams's claim is not preserved for our review. We disagree.

Arkansas Rule of Appellate Procedure—Criminal 33.1, provides in part:

> When there has been a trial by jury, the failure of a defendant to move for a directed verdict at the conclusion of the evidence presented by the prosecution *and again at the close of the case* because of insufficiency of the evidence will constitute a waiver

of any question pertaining to the sufficiency of the evidence to support the jury verdict. (Emphasis added.)

The issue, then, is what is the "close of the case," as the phrase pertains to Williams. We believe that a reasonable interpretation is the close of the defendant's own case. The policy behind the rule is certainly served by having a defendant renew his motion at the close of his case. This gives the trial court the opportunity to decide the motion based on all of the pertinent evidence relating to that particular defendant.

Turning then to the merits, Williams and Gillum both contend, as did Wilson, that the State's case against them is riddled with inconsistencies. It is true that State witnesses gave contradictory testimony about which way Newsome's car turned onto McAuley Street, whether the passenger door of the Cadillac was opened after the shooting, whether the car slowed or stopped, and whether Ellis went to the driver's side to push Newsome aside in order to drive the car. There was further an issue about the finding of gun powder residue on Newsome's jacket, which is only consistent with close-range shooting and which was inconsistent with the testimony of Dr. Peretti, who testified that there was no evidence of close-range firing around the wounds. Witnesses also were not completely in accord regarding what weapons were used: Frederick Ellis said there were two handguns, while Michael Lewis testified to two handguns and a rifle. And there was a conflict in testimony about which car was driving in front of the Cadillac: Michael Lewis's or Kevin Johnson's, the color of the Cadillac, and whether the handguns were brown or chrome.

Further, the two appellants emphasize that Frederick Ellis and Kevin Johnson were the only two witnesses who identified them, and they are both convicted felons. Furthermore, their statements were contradictory and also conflicted with other trial testimony. Added to this was the fact that Johnson did not give his statement until nine days after the shooting, which the defense claimed undercut his credibility because he may have talked to Ellis. Finally, Williams and Gillum refer to the testimony of Carla Nolan, who was Williams's witness and who testified that she heard shots fired and looked out her window. She saw two cars coming from the Mayfair Apartments. She stated that the car

traveling north had passengers shooting at the car traveling south. This testimony, of course, was at odds with the State's witnesses who testified that the shooters were all on foot.

Regardless of the discrepancies, inconsistencies, and contradictory evidence, we reiterate that matters of credibility are for the jury to determine. *See Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998).

We also note that there was additional evidence introduced against Gillum that supports a finding of guilt. First, Ellis testified to Gillum's motive for the shooting, which was an argument between Gillum and Newsome at a barbeque place on Missouri Street a week prior to the shooting. There were, in addition, two statements made by Gillum and testified to by prisoners in the Crittenden County Jail. Prisoner Jeff Cayton testified that he was in jail with Gillum and that Gillum said, "I shot . . . [Newsome's] car up," that Ronald Davis had taken care of the gun, and that the shooting was gang-related. Prisoner Hugh Foster testified that Gillum was "talkin' about how he had done shot one guy and was probably going to prison." Foster added that Gillum told him when he got out of prison, "he was gonna shoot somebody else."

As was the case with Wilson, we conclude that the evidence mounted against Antonio Williams and Kenneth Gillum was substantial and amply supports the judgments of conviction.

## II. Severance

Demarco Wilson and Antonio Williams also contend that the trial court should have granted them a severance. Wilson's specific argument is that Gillum's two jailhouse confessions prejudiced him because there were references to a gang war involving Newsome and Gillum. Wilson claims that Gillum's statements imputed guilt to him.

We disagree. A trial court has discretion to grant or deny a severance, and on appeal we will not disturb the ruling absent an abuse of discretion. *See Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996); *McDaniel v. State*, 278 Ark. 631, 648 S.W.2d 57 (1983). Our joinder and severance rules are designed

to promote an expeditious disposition of criminal cases while at the same time not prejudicing individual defendants. *See Echols v. State, supra.* Joinder of defendants is appropriate where a joint scheme or plan is involved. *See* Ark. R. Crim. P. 21.2. Severance is appropriate for trial when it is necessary for a fair determination of the guilt or innocence of a single defendant. *See* Ark. R. Crim. P. 22.3(b)(iii).

■ When making the decision regarding severance of trials for multiple defendants, the trial court should consider: (1) whether the defenses of the defendants are antagonistic; (2) whether it is difficult to segregate the evidence; (3) whether there is a lack of substantial evidence implicating one defendant except for the accusation of the other; (4) whether one defendant could have deprived the other of all peremptory challenges; (5) whether one defendant will be compelled to testify if the other does so; (6) whether one defendant has no prior criminal record and the other has; and (7) whether circumstantial evidence against one defendant appears stronger than against the other. *See Echols v. State, supra.* We held in *Echols* that if there is an evidentiary basis for the jury to decide each defendant's case separately, there is no error in denying severance of trials just because of inconsistent strategies. We added that unless the conflicting strategies go to the essence of the defenses and are so great that both defenses cannot be accommodated by the jury, severance is not required. *See id.*

■ We initially observe that according to Arkansas Rule of Criminal Procedure 22.3(a), it is only when a statement "makes reference" to a codefendant that it is inadmissible against that codefendant. Here, Cayton's recounting of Gillum's jailhouse statement did not make reference to Wilson or Williams, but only to Gillum. Thus, severance was not warranted under this rule. Moreover, turning to the *Echols* factors, the only factors implicated in the instant case are the possible difficulty of segregating the evidence as it relates to individual appellants and the fact that the evidence appeared stronger against Gillum than against the other two appellants. Neither of these two factors suffice to mandate severance. The jury could have easily separated this testimony against Gillum from the other codefendants. And the trial court took appropriate precautions under the rule to foster a fair

trial for Wilson and Williams. For example, the court redacted the reference to "three guns" in Gillum's jailhouse statement, and then it gave a cautionary instruction to the jury that "a witness is about to be called that will give testimony that relates to the defendant Kendrick Gillum alone, and you should not and are instructed not to consider the evidence adduced from this witness in any regard to Antonio Williams or Demarco Wilson."

Williams argues a separate point, however. He contends that the trial court should have granted him either a severance or mistrial because Sedric Harper, a witness called by Gillum, testified that when he heard about Newsome's death, he telephoned Gillum at his home to warn him, and Williams answered the telephone. Williams's counsel claims that this testimony placed Williams and Gillum together on the evening of the murder when the only other testimony that they were together came from suspect witnesses such as Frederick Ellis. Williams, like Wilson, further claims that he was prejudiced by the testimony because the evidence against Gillum was so much stronger, particularly in light of the evidence of Gillum's jailhouse statements. In this regard, Williams notes that attorneys for Williams and Gillum had supposedly agreed that Sedric Harper would not mention the other two appellants.

The trial court denied Williams's motion for several reasons. The court stated that it was obvious that defense counsel for Gillum and Williams had coordinated their strategies, which included the Sedric Harper testimony. The trial court further stated that it felt it had been "sandbagged" because defense counsel had never before intimated that there was any conflict or antagonistic defenses between Gillum and Williams until the fourth day of trial. The trial court also had doubts that the Harper testimony was harmful because no time frame for the Harper telephone call in relation to the time frame of the murder was given, and, if anything, the testimony established an alibi for Williams.

Because Williams's motion was made on the fourth day of trial, the trial court stated that at this stage, a declaration of a mistrial was the appropriate remedy. The court denied Williams's motion for mistrial but gave the jury a cautionary

instruction on Harper's testimony, stating that it should only be considered against Gillum and not against Wilson and Williams. We note on this point that a mistrial is a drastic remedy and is proper only when an error is so prejudicial that justice cannot be served by continuing the trial and when it cannot be cured by an instruction. *See Ferrell v. State*, 325 Ark. 455, 929 S.W.2d 697 (1996). We conclude that any prejudice to Williams occasioned by the Harper testimony was cured by the instruction to the jury.

There is also the fact that Williams did not timely move for severance or object to the Harper testimony. During opening statement, Gillum's attorney referred to the fact that Williams and Gillum were together after the murder, but this comment drew no objection from Williams's counsel. A motion for severance must be made pretrial except that it may be made before or at the close of the evidence if it is based upon a ground not previously known. *See* Ark. R. Crim. P. 22.1. Severance is waived if it is not made at the appropriate time. *See Wynn v. State*, 316 Ark. 414, 871 S.W.2d 593 (1994). To preserve an issue for review, a party must object at the first opportunity in the trial court. *See Love v. State*, 324 Ark. 526, 922 S.W.2d 701 (1996). Clearly, Williams did not do so in this instance.

## IV. *Rebuttal Witness*

For his next point, Gillum contends that the trial court erred in refusing to allow him to call a rebuttal witness to testify to Jeff Cayton's bias. Specifically, Gillum called Stanley Carter from the Crittenden County Jail to impeach the testimony of Jeff Cayton, who had testified about Gillum's jailhouse statement. According to Gillum's counsel, Carter would have testified that Cayton had a "beef" with Gillum and had said that he was going to get Gillum back because of it. The State objected to this testimony because Carter was not on Gillum's witness list. Gillum's counsel answered that he had not learned of the jailhouse confessions until eighteen days before trial because of personnel changes in the Prosecutor's office. After he found out, he investigated and did not learn about Stanley Carter until the day before he called him as a witness. The trial court refused to allow Carter to testify and refused to continue the case so that the State could talk to Carter.

The trial court's grounds were (1) the witness was undisclosed, (2) Cayton never got the opportunity to admit or deny any alleged bias, and (3) Carter's testimony would be hearsay.

 The trial court's ruling calls into play both the rules of criminal procedure and rules of evidence. Our criminal rules provide that, if requested by the prosecuting attorney, defense counsel shall inform the prosecution of the nature of any planned defense and the names and addresses of witnesses. *See* Ark. R. Crim. P. 18.3. Sanctions by the trial court for failure to adhere to discovery rules include granting a continuance, excluding the evidence, or ordering the discovery. *See* Ark. R. Crim. P. 19.7.

 Additionally, our rules of evidence do not permit a witness's impeachment by extrinsic evidence for purposes of attacking credibility. *See* Ark. R. Evid. 608(b). The general rule is that a witness may not be impeached with extrinsic evidence on a collateral matter. *See Landrum v. State*, 320 Ark. 81, 894 S.W.2d 933 (1995). This court has held, however, that a matter is not collateral if the evidence shows bias, knowledge, or interest of the witness. *See Smith v. State*, 328 Ark. 249, 943 S.W.2d 234 (1997); *Dansby v. State*, 319 Ark. 506, 893 S.W.2d 331 (1995). In other words, if a witness denies the facts claimed to show bias, the attacker has a right to prove those facts by extrinsic evidence. *See id.* Stated differently, the witness must first deny the bias before he or she can be impeached by extrinsic evidence. *See Goodwin v. State*, 263 Ark. 856, 568 S.W.2d 3 (1978); *see also Allen v. State*, 277 Ark. 380, 641 S.W.2d 710 (1982).

The State correctly points out that Gillum did not elicit testimony from prisoner Cayton while he was on the stand about his statements to Carter. Gillum's counsel responds that he was not aware of Carter until the day before he called him and argues that he could not have asked Cayton about bias against Gillum or put Carter on his witness list because of this. Gillum's counsel also makes the point that Carter was a rebuttal witness and therefore he was not required to be placed on the witness list.

 In a case with similar facts except that the surprise witness was called by the State, this court held that the State is not required to give the defense the names of rebuttal witnesses until

the defense case has been presented because until that time, the State cannot know of witnesses needed for rebuttal. *See Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996). In *Isbell*, the State learned about the witnesses only the night before they were called. The trial court allowed the rebuttal testimony, but first gave the defense a recess to confer with the witnesses. We held that the trial court did not abuse its discretion. The same rationale should apply to a rebuttal witness for the defense.

 Despite this, there is still the problem with Gillum's not asking Cayton about his bias toward Gillum prior to introducing Carter's testimony about Cayton's bias. Defense counsel for Gillum, of course, could have called Cayton as a hostile witness and posed the bias question to him. Also, there is some question about whether Gillum's counsel in fact did know about Stanley Carter at the time he cross-examined Cayton. Cayton was cross-examined by defense counsel the afternoon of November 6, 1997, and defense counsel then tried to call Carter the next afternoon. At that time, defense counsel told the trial court that he had learned about Carter the day before, which would be on the same day that he cross-examined Cayton. We hold that the trial court did not abuse its discretion in refusing to allow Gillum to call Stanley Carter as a rebuttal witness.

As a second issue, Gillum maintains that the trial court erred in allowing prisoner Hugh Foster to testify that Gillum had said that he had shot one guy and was going to shoot another when he got out of prison. Gillum argues that the statement does not relate to the crime involved in this case, and the trial court improperly allowed it into evidence under Ark. R. Evid. 404(b).

 Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove conformity therewith, but may be admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. A trial court's decision to admit evidence under this rule is a discretionary one which will not be reversed absent an abuse of discretion. *See Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995). The Rule 404(b) exceptions go beyond a plan or scheme and include any independently relevant

proof of motive, opportunity, intent, absence of mistake, and the like. *Dillard v. State*, 333 Ark. 418, 971 S.W.2d 764 (1998).

■ Foster's testimony that Gillum said he had shot one guy and was probably going to prison was admissible under 404(b) to show his intent, knowledge, and absence of mistake regarding his shooting of Newsome. The remaining part of the statement — that he would probably shoot someone else when he got out of prison — is probative of his plan to eliminate a State witness once he was released, such as Frederick Ellis. We are not convinced of an abuse of discretion by the trial court in permitting this statement.

*V. Alibi Witness*

As a final point, the appellants complain that the trial court coerced them into not calling one of their alibi witnesses, Tasha LeFlore. The trial court stated that if she was called, the court would allow the State to impeach her with evidence of AK-47 rounds found at her home bearing the same lot number and year as those found at the Mayfair Apartments crime scene. This, the appellants maintain, precluded them from calling a key witness. The rounds had been found by investigating officers seven months after the killing and were not disclosed to the defense.

■ We conclude that this argument is without merit because this court is provided with nothing to review. Defense counsel did not call LeFlore as a witness or proffer what her testimony would be. Though there was conversation among trial counsel and the court about impeachment of LeFlore, it never came about. Matters left unresolved are waived and may not be raised on appeal. *See Parmley v. Moose*, 317 Ark. 52, 876 S.W.2d 243 (1994). This court will not speculate on what might have occurred, and because of this, we will not consider an issue that was not decided by the trial court. *See Cordell v. Nadeau*, 321 Ark. 300, 900 S.W.2d 556 (1995). To do otherwise would be to render an advisory opinion. *See id.*

The record has been reviewed for other reversible error pursuant to Ark. Sup. Ct. R. 4-3(h), and none has been found .

Affirmed.